**EXHIBIT 1**

**CMS/PML's concealed partnerships**

**(17 Pages, including cover sheet)**









# THOMAS NOWAK, KARLSRUHE, GERMANY

Watch

NETWORK

CSV

Quarterly Exports in CSV

Now available in CSV format and optimized for applications in AI and Analytics.
North Data's quarterly exports have become the industry standard for company information.

GUARDALEY LTD

2 May 2022 in United Kingdom
Director: Thomas Nowak No longer Director: Benjamin Perino Secretary: SL24 Ltd. No longer Secretary: L4 YOU CO SEC Ltd

24 Jul 2018
Director: Thomas Nowak No longer Director: Benjamin Perino

17 May 2018 in United Kingdom
Director: Thomas Nowak No longer Director: Benjamin Perino

MAVERICKEYE UG

11 Apr 2018
Managing Director: Thomas Nowak Change of headquarters Maverickeye UG Address Capital: €300.00 Shareholder agreement Proxy Corporate Purpose

21 [illegible] 4
Managing Director: Thomas Nowak No longer Managing Director: Yanick Gabriel

## PATRICK ACHACHE, IMMENSEE, SWITZERLAND

**Watch**



NETWORK

Jürgen Lehner · AL Immo GmbH · IP Equity GmbH · Maximilian AG Friedery · Patrick Achache · Intersda GmbH · Copyright Management Services Ltd. · Daniel Erich Wyss · Vettura Investment AG · previously

---



**Quarterly Exports in CSV**

Now available in CSV format and optimized for applications in AI and Analytics:
North Data's quarterly exports have become the industry standard for company information.

---

**AL IMMO GMBH**

20 May 2021
No longer Managing Director: Patrick Achache

17 Feb 2012 as AL Alufolienwerk GmbH
Registration · Managing Director: Patrick Achache, Jürgen Lehner · Address · Capital: €25,000 · Shareholder agreement · Proxy · Corporate Purpose

**COPYRIGHT MANAGEMENT SERVICES LTD †**

13 Oct 2022
Director: Lubesly J. Tellidua · No longer Director: Eleanor E. Powell, Patrick Achache

19 Mar 2019
Director: Eleanor E. Powell · No longer Director: Patrick Achache

23 Oct 2014 as Copyright Collections Ltd.
Registration: 23/10/2014 · Director: Patrick Achache · Capital: £1 00

**IP EQUITY GMBH †**

23 Feb 2011
Chair of the board: Patrick Achache · Managing Director: Stephan Bolliger · Name: IP Equity GmbH · Company statute

4 Mar 2010 as BP Equity LLC
Registration · Managing Director: Patrick Achache · Shareholder (1) · Address · Company statute

**INTERSDA GMBH**

3 Apr 2018
Chair of the board: Patrick Achache · Managing Director: Daniel Wyss · Shareholder (1) · Address · Company statute

5 Feb 2012
Chair of the board: Patrick Achache · Shareholder (1) · Company statute

5 Jan 2012
Managing Director: Patrick Achache, Maximilian Friedery · Shareholder (1)

6 Oct 2006
Registration · Managing Director: Patrick Achache · Shareholder (1) · Company statute





## MAVERICKEYE UG, EGGENSTEIN-LEOPOLDSHAFEN, GERMANY

🖶 Dossier    🕅 Watch

**NAME**
Maverickeye UG

**REGISTER**
District Court of Mannheim HRB 730194
District Court of Stuttgart HRB 742 895

**ADDRESS**
Daimlerstr. 9, 76344 Eggenstein-Leopoldshafen, Germany
Stuttgart, Germany

**CORPORATE PURPOSE**
Services for the protection of performance rights and investigation of IT information, such as the search of IP addresses and the electronic preservation of data

**HISTORY**

**NETWORK**
Yanick Gabriel — Maverickeye UG — GUARDALEY Ltd
Thomas Nowak

**DATA SERVICES**
Unlock the full potential of processed company data with our API or Quarterly Exports.

**PUBLICATIONS**

31 Mar 2021
Original document: "Liste der Gesellschafter"

23 Apr 2018
Change of headquarters: Maverickeye UG · Seat: Eggenstein-Leopoldshafen (Amtsgericht Mannheim HRB 730194 ), Germany

⬚ Apr 2018
Managing Director: Thomas Nowak · Change of headquarters Maverickeye UG · Address · Capital: €300.00 · Shareholder agreement · Proxy · Corporate Purpose

30 Dec 2016
Annual report for the year ending 31/12/2015 · Balance sheet for 31/12/2015

4 Dec 2015
Annual report for the year ending 31/12/2014 · Balance sheet for 31/12/2014

6 Jan 2015
Annual report for the year ending 31/12/2013 · Balance sheet for 31/12/2013

21 Oct 2014
Managing Director: Thomas Nowak · No longer Managing Director: Yanick Gabriel

13 Feb 2014
Annual report for the year ending 31/12/2012 · Balance sheet for 31/12/2012

23 Jul 2012
Registration · Managing Director: Yanick Gabriel · Address · Capital: €300.00 · Shareholder agreement · Proxy · Corporate Purpose

# Movie Companies Sue Lawyer in Dispute Over Piracy Settlement Cash

December 4, 2023 by **Andy Maxwell**

HOME > LAWSUITS > COPYRIGHT TROLLS >

*Movie companies behind The Expendables, Olympus Has Fallen, and The Hitman's Bodyguard, have built a reputation for tracking down thousands of BitTorrent users in pursuit of cash settlements. In a rare case that could provide an even rarer glimpse behind the scenes of an industrial-scale settlement operation, the movie companies are now suing a lawyer who acted for them in a large number of settlement cases.*

While opinions, definitions, and scope vary, it seems fairly clear that lawsuits targeting BitTorrent pirates do little to prevent mass piracy. A steady stream of suspected pirates continuously line up to become the next individuals to face potential legal action, regardless of how many that has happened to previously.



For companies whose movies are downloaded and shared illegally, solutions have been developed that allow them to monitor suspected pirates and track them back to their ISPs, before obtaining their identities and making a settlement

offer to end the risk of a full-blown lawsuit. For many movie companies, this business model provides a stream of revenue from those perceived as unprepared to pay for their product.

Internet users targeted by lawyers working for those companies often view settlement demands of up to thousands of dollars as disproportionate to any actual damage suffered. Nevertheless, huge numbers of people have paid up over the years, with their cash often being handed to a law firm in the first instance. From there, payments typically wind their way back to the movie companies, with intermediaries also involved taking their cuts in what has become a global, industrial-scale settlement factory.

## Movie Companies Sue Lawyer In Dispute Over Settlement Cash

Millennium Funding, Bodyguard Productions, and LHF Productions are behind famous movies including The Expendables, Olympus Has Fallen, and The Hitman's Bodyguard. They've also built a reputation for demanding cash settlements from alleged pirates and more recently, filing lawsuits against internet service providers alleged to have knowingly harbored them.

In a lawsuit filed at an Illinois district court last week, the companies target attorney Michael Hierl of Illinois, and Hughes Sokol Piers Resnick & Dym, Ltd, a Chicago law firm of which Hierl is a shareholder.

According to his profile, Hierl has practiced exclusively in the area of intellectual property law since 1980; the lawsuit claims that Hierl and his law firm carried out work for the plaintiffs, including "filing infringement actions against and collecting monetary settlement payments from third-party infringers."

In a nutshell, the plaintiffs allege that the defendants have refused to provide a "complete and accurate accounting identifying all costs, fees, and receipts for each infringement action" and failed to forward settlement amounts received

in those actions.

The movie companies allege a breach of contract but note that due to the defendants' alleged accounting deficiencies, they are unable to put an exact figure on the amount Hierl and his law firm failed to pay. For their part, the defendants view the situation quite differently.

## Fighting Pirates, Help From Agents

The lawsuit describes Millennium's entry into this particular piracy-fighting arena as follows:

> To help combat infringing copies of Millennium's Films being sold and distributed through the Internet, in 2012, Millennium and its predecessors in interest, through their prior agent, engaged Defendants to prepare and file infringement actions against the third-party infringers in the United States District Court of the Northern District of Illinois.

The name/s of Millennium's "predecessors in interest" go unnamed at this point, with the same applying to Millennium's "prior agent". The complaint simply notes that the agent would supply Hierl and his law firm with the IP addresses of suspected infringers and they would file 'John Doe' complaints and "propound subpoenas to non-party internet service providers" to determine the identity of the suspected infringers based on their IP addresses.

Once suspected infringers were identified, the defendants reportedly amended the complaints to name the suspected infringers. In the event the named defendants agreed to settle, Hierl and his law firm were authorized to take a percentage of the settlement amount as their contingency fee and then send the balance to Millennium's agent.

parties that have since merged with Plaintiff Millennium Media, Inc., in the Northern District of Illinois against third-parties infringing Millennium's Intellectual Property," the complaint adds.

## New Agent Replaces Prior Agent

Millennium says that in 2019 (date unspecified), it appointed a new agent "to communicate with Defendants on Millennium's behalf to coordinate Defendants' enforcement of Millennium's Intellectual Property, thereby replacing Millennium's prior agent." This change was communicated to the defendants on December 7, 2020, the complaint notes, adding that all future payments should've been made to the new agent.

In common with the prior agent, the new agent's name isn't identified at this point. However, Millennium says that the defendants should've sent the new agent "monthly reports providing details of the Infringement Actions including, but not limited to, any number of actions filed, the number of settlement agreements reach, and collections made as a result of any such settlement agreements."

On unspecified dates in 2021, the movie companies said they "detected discrepancies" between the information available from the dockets of the infringement actions brought on their behalf and the "information and accountings" the defendants had provided to the movie companies, including "what appeared to be settlement payments Defendants collected but failed to report and pay to Plaintiffs."

The complaint alleges that since then, and despite numerous requests for Hierl and his law firm to provide files "and a complete and accurate accounting" for the infringement actions carried out, none have been forthcoming.

## 'Prior Agent' Was Part of Infamous Guardaley Settlement Operation

The complaint references a letter dated November 23, 2021 in which Hierl responds to a proposed complaint by Millennium which outlines the movie company's differences with Hierl and his law firm. It contains the following paragraphs:

> In response to your email of November 17, 2021, we dispute the allegations made in your clients' proposed complaint.
>
> For example, our firm does not owe PML $69,765.78 or any other amount, as alleged in paragraph 15 of your proposed complaint. As pointed out in our letter of August 16, 2021, our initial information was that CMS/PML/Millennium had agreed to a transition of copyright litigation matters from CMS to PML. We subsequently learned that CMS and PML had not reached an agreement. As a result, we continued to hold any undisbursed settlement recoveries in our firm trust account pending a resolution and definitive instructions.
>
> It is also our understanding that the CMS/Millennium agreement is still effective. Thus, your statement that CMS is "Millennium's prior agent" appears to be incorrect.

Some clarifications are in order before moving on.

## CMS and PML

CMS (the 'prior agent') is a reference to Copyright Management Services Ltd, a company that has appeared in many lawsuits targeting alleged BitTorrent pirates in a number of jurisdictions on behalf of many copyright holders. The company was founded by Patrick Achache, a leading figure at anti-piracy tracking firm Maverickeye, which in turn works with German/UK company Guardaley; Achache previously described himself as Guardaley's data director.

As previously reported, Achache stopped being a Director of CMS on November 19, 2019, and the same day, Lubesly Tellidua – a beauty queen from the Philippines with links to Achache and Guardaley – became the controlling party. In July 2022, Tellidua filed an application for CMS to be struck off the register of companies and on October 25, 2022, official records in the UK reported that the company had been dissolved.

PML (the 'current agent') is a reference to PML Process Management Ltd, a Cyprus-based company that began life under a different name before switching to its current name in the first half of 2020.



By 2021, many lawsuits in Sweden alone suggested a link between CMS and PML, if only due to the latter picking up where the former had left off while continuing to use data provided by Maverickeye as the basis of copyright actions.

As reported in 2022, copyright notices sent to US ISP CenturyLink in support of a DMCA subpoena application by Millennium and several other companies, referenced infringements between January 2020 and January 2021; the

Since Cypriot public business records tend to obfuscate company ownership, claims that PML was simply CMS with a new coat of paint, and/or under new ownership, remained speculative.

## Hierl and Hughes Sokol Piers Resnick & Dym, Ltd: CMS is Our Client

From the statements in the complaint, the position of Hierl and Hughes Sokol Piers Resnick & Dym seems clear: their business relationship is with CMS, nobody else. In February 2021, the law firm wired $19,100.39 to Millennium, reportedly at the direction of CMS, PML and Millennium itself.

"A balance of $69,765.78 was wired to CMS based on our understanding that CMS and Millennium had agreed," the letter continues. "Our firm has no relationship with PML (attorney-client or otherwise). Further, we were not aware of any unresolved fees allegedly due PML. Our information was that PML was not entitled to any portion of the settlement recoveries."

## Familiar Names, Familiar Companies

At this point, Hierl's letter references what appears to be a change in the business arrangement, one that he nor his company acknowledge having agreed to. Relevant as that might be, the end of the paragraph is more interesting.

"There was no agreement to change the distribution from 'gross collections' to 'net collections.' But PML already knows that because CMS and PML apparently use the same accountant, Thomas Nowak, who was a recipient of that email."

Thomas Nowak is the director of German-based UK-registered company Guardaley and German-based tracking company Maverickeye, whose evidence netted Millennium and other filmmakers big wins, including some against VPN providers.

In his November 2021 letter, Hierl calls on the movie companies to find some common ground to avoid "time and expense of senseless litigation." The lawsuit filed last week suggests consensus was elusive. A November 2022 letter sent to Hierl by the plaintiffs notes that while CMS may be Hierl's client in some capacity, the attorney reportedly filed several cases on Millennium's behalf, meaning that Millennium is also a client.

"In addition, Millennium requests that you cease all communication with Patrick Achache, CMS, and/or any company associated with Mr. Achache or CMS related to any matter involving Millennium. Moving forward, please report all information and developments in any case you are handling for Millennium to us," the letter concludes.

Overall, Millennium believes that there is an enforceable contract and it's owed $130,000 in collected settlements. The movie companies are suing for breach of contract and request an order requiring the defendants to provide a full, current and complete accounting of the infringement actions. They're also seeking monetary relief in an amount to be decided at trial.

PML says that it has "ten years of experience in this field" and provides a "seamless service delivery" on behalf of its clients.

"We offer returns of 30% of net revenue (the rest is distributed to the partners working on the project, e.g. law firms and data supplier) in exchange for providing this service," a statement on its website reads.

How all of this dovetails with a March 1, 2019, claim that Guardaley had handed over its United States operations to an entity called American Films isn't clear.

In this lawsuit, American Films receives zero mentions but according to a recent press release ISPs can take advantage of an offer to prevent themselves being sued for their customers' piracy activities. This arrangement involves another company using an American Films subsidiary's tracking abilities.

*The complaint can be found here (pdf)*

‹ Next Post                                                                                                    Previous Post ›

## Tagged In:

LHF Productions millennium funding the hitman's bodyguard

## You Might Also Like:

**EXHIBIT 2**

**D.PR Bankruptcy Court, 23-02870**

**Charles Muszynski Ch. 7**

**MOTION TO INFORM NOTICE OF BANKRUPTCY, Doc. #236**

**(13 Pages, including cover sheet)**

*RECEIVED AND FILED*
*PRO SE UPLOAD TOOL*
*07/29/2024 - 10:54 AM*
*USBC*
*(WRT)*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                      }
                                            }
Charles Muszynski                           }        Case No. 23-02870 (MCF)
                                            }
Debtor                                      }        Chapter 7
                                            }
_____     }

## MOTION TO INFORM NOTICE OF BANKRUPTCY

**TO THE HONORABLE MILDRED CABAN FLORES**
**UNITED STATES BANKRUTCY JUDGE**

1.    Now comes Muszynski, "Debtor" and makes Motion To Inform And Notice Of Creditors'
Bankruptcy to fulfill another affirmative duty willfully abandoned by the alleged "movie company"
Creditors and their undenied business partner and representative, Kerry Culpepper ("Culpepper").
Culpepper, cognizant of his affirmative duty to inform the Court of his partners' bankruptcy, willfully
refuses to do so, and seeks to avoid mooting already flawed arguments.

2.    Culpepper again lies by omission to conceal facts from the D.PR, and attempts to hide: a) the
Chapter 11 bankruptcy 29 June 2024 filed by entities with whom he partners and represents, b) the Ch. 11
conversion to Ch. 7 on 10 July 2024, c) transfer of ownership, appeal rights, and collection rights to the
D.DE Bankruptcy estate and Trustee, and d) Culpepper's illegitimate, contemptuous collection actions.
See *In re: Frontier Communications Corporation, et al.*, S.D.N.Y., Case No. #20-22476-mg, Culpepper's
"Notice Of Bankruptcy", Doc. #2392, and *In re: Redbox Entertainment, LLC*, D.DE Bankruptcy Court,
Case No. #24-11457, the court's "Order Converting Cases From Chapter 11 to Chapter 7 Of The
Bankruptcy Code And Granting Related Relief", Doc. #5; Exhibits 1 and 2, respectively.

3.    Debtor filed bankruptcy 11 May 2023, determined by two trustees an asset-less case and
listed alleged "movie companies", represented by their undenied partners, Culpepper and Joel Rothman
("Rothman"), as creditors. Culpepper and Rothman undeniably are financed by and participate in a fee-
splitting partnership with the concealed litigant and non-lawyer, PML Process Management Limited
("PML") located in the Republic of Cyprus which launders foreign dark-money to the U.S. lawyers to sue
on behalf of alleged "movie companies" for fraudulent copyright claims rented by non-performing
entities ("NPE") to extort then split profits (payoffs) with PML 70% / 30% (as shown on the record,
PML's partnership retains 70%). Culpepper admits PML's primacy and has never denied the arrangement.

4.    In BAP Case No. #23-23, Doc. #1148362, and despite extraordinary and illicit efforts to
conceal PML and obfuscate his partnership's racketeering, Culpepper's own statements evidence their
sham and PML's primacy in it (PML's presence remans concealed from the S.D. FL since inception):

"*Muszynski seeks to punish PML for petitioning the S. D. Flo. to put a stop to his Liquid VPN service...*"
Not "Millennium", "Voltage", "Screen Media Ventures ("SMV"), or any of 36 other partners; PML.

5.  While hiding PML and omitting it from filings, Culpepper "joined" the partnership's entities
as (alleged) "movie company Creditors", including his alter egos 42 Ventures, LLC, CulpepperIP, LLLC.
And PML, whom Culpepper admits was and is *the principal litigant* and an undenied fee-splitting partner
and funder. Before underlying litigation commenced in 2021, Culpepper's included SMV and its owner of
more than 10% of equity, "Chicken Soup For The Soul Entertainment, Inc." ("CSFTSE") as partners in
litigation. Despite constant shifting and restructuring of entities, names, and ownerships to conceal
interests and PML's primacy among related entities (another badge of fraud), SMV remained present. A
tiny sample of Culpepper's filings shows SMV's and CSFTSE's (therefore PML's joint position) long-
term involvement and evidence Culpepper's contempt in the instant matter:

a.  "Application of Kerry Culpepper To Appear Pro Hac Vice", Doc. #10, p.2, includes SMV;

b.  "Final Default Judgment", Doc. #17-A, p. 4, includes SMV;

c.  "Application and Order To Appear *Pro Hac Vice*", Doc. #97, p.3, includes SMV;

d.  "Motion Of Millennium Funding, Inc. Et Al. To Intervene As Appellee", Doc. #001148362,
p.2, in BAP Case #23-23, includes SMV;

e.  "Statement Regarding Interested Parties 1st Cir. BAP L.R. 8010-1(b)(4)", Doc. #001148362,
¶3, in BAP Case #23-23, includes SMV and Chicken Soup For The Soul, Inc.;

f.  "Creditors' Objection To Debtor's Motion For Leave To Appeal Interlocutory Order", Doc.
#001148365, p.2, in BAP Case #23-23, includes SMV;

g.  "Notice Of Appearance", Doc. #001148374, p.2, BAP Case #23-23, includes SMV and PML.

6.  Culpepper's "Statement Of Joinder In Motion For (A) Relief From The Automatic Stay And
(B) Injunctive Relief Pursuant To 11 U.S.C. §105(A)", Doc. #23, p.1, E.D.TX, Case #23-90112, included
his appearance with SMV and dozens of other alleged "movie company clients" before being admitted,
see Doc. #17, p.12, signature block includes SMV. Culpepper continues to conceal undenied pecuniary
interest coupled with representation of his fee-splitting, funding partner, PML. In part, these interests
motivate Culpepper's joinder of the partnership's interests and obvious vexation.

7.  Despite Culpepper's concealment of his partner/clients' Chapter 11 filing *29 June 2024*,
he included SMV and CSFTSE in filings for weeks after the automatic stay was effective and after earlier
providing another court proper notice. Culpepper willfully refuses to provide required notices of
bankruptcy to D.PR for Case No. #23-02870, the BAP for Cases Nos. #24-11 and #24-14, the S.D.FL for
Case No. #21-20862, and SKN for Case No. #NEVHCV2022/0183; *four courts and five cases* willfully
denied notices of bankruptcy while filings continued as though nothing had changed, a few of which are:

a. "Motion Of Millennium Funding, Inc., Et Al. To Intervene As Appellee", Doc. #1149520, p.2, at the BAP, Case #24-11, but Culpepper made no other notices filing therein on **1 July 2024**;

b. "Notice Of Cross-Appeal And Statement Of Election", Doc. #212, p.2, D.PR on **1 July 2024**;

c. "Notice Of Cross-Appeal And Statement Of Election", Doc. #216, p.2, D.PR on **1 July 2024**

d. "Motion Of Millennium Funding, Inc., Et Al, To Intervene As Appellee", Doc. #1149520, p.2, at the BAP, Case #24-11, filed by Culpepper without any other notice therein on **2 July 2024**;

e. "Cross-Appellants' Designation Of Additional Items To Be Included In The Record And Statement Of Issues To Be Presented On The Cross-Appeal", Doc. #224, in D.PR, Case #23-02870, filed therein by Culpepper and without any other notices to the D.PR, on **7 July 2024**;

8.  Given Culpepper's long-term partnership, representation, principal involvement in an eight-figure collections matter, and prior notice to another court, how is it possible Culpepper did not know of SMV's and CFSTSE's eminent, much less pending bankruptcy? Their Form 204 lists thirty (30) creditors, three (3) with claims exceed the $15 Million Culpepper continues collections for in the U.S. and SKN. Twenty-seven (27) claims are less than Culpepper's "judgment", a proportion impossible to overlook.

9.  Without notices, Culpepper continues willfully, contemptuously filing fraudulent collection actions, and now omits SMV and CSFTSE without explanation to continue concealing their status.

10.  Culpepper's "Objection To Debtor's Motion For Stay", Doc. #1149611, p.2, BAP Case No. #24-11, willfully omitted SMV and CSFTSE despite Culpepper prior filing on **14 July 2024**, a Notice Of Bankruptcy in S.D.N.Y., (which omitted notice of conversion to Chapter 7 four days earlier).

11.  Culpepper willfully refuses to notice that his partner/clients' Chapter 11 converted to a Chapter 7 on 10 July 2024, see Doc. #5, Case No. #24-11457, D.DE; Exhibit 2.

12.  Culpepper willfully concealed by omission, important facts from the D.PR because upon his joined partners' bankruptcy, their claims became property of the bankruptcy estate and Trustee George Miller. Upon discovering Culpepper's latest lies of omission, Debtor spoke with Trustee Miller Friday, 27 July 2024 at 3:09 p.m. for several minutes. Trustee Miller confirmed the Culpepper's partners' property belongs to the estate, that he holds authority over the interests, that it is improper for third parties to engage in collections, and that doing so violates the automatic stay.

13.  Culpepper admits to dozens of continuing violations of Debtor's automatic stay stretching to 12 May 2023. Trustee Miller had keen interest in the instant matter and requested copies of related filings.

14.  Culpepper, an undenied copyright troll and pettifogger, must employ ambush litigation, proven fabrications, admitted procedural and ethical failures, and repeated lies of omission because the facts ventilate his positions. His obvious contempt for the bankruptcy process insults not only Congress' supposed intent to provide legitimate creditors and debtors prompt resolutions but the D.PR's dignity when he cheats and "plays cute".

15. Accordingly, since an 'officer of the court' will not honor his oath, it again falls to Debtor to inform the D.PR of Culpepper's partner/client bankruptcies because they refuse to admit the rights therein have belonged to the Bankruptcy Trustee since 29 June 2024 in the Delaware bankruptcy proceedings.

**CERTIFICATE OF SERVICE**

The undersigned respectfully submits this filing and further certifies it was served on the parties and entities named in the case by way of the Court's CM/ECF portal system and/or email and/or mail on the date below subsequent to its delivery pro se and as service was met as required as of the date indicated in this submission and Debtor's certification below.

29 July 2024

Respectfully submitted,

Charles Muszynski, pro se
usfilefolder@protonmail.com
P. O. Box 1423
Basseterre
St. Kitts and Nevis
West Indies

# EXHIBIT 1

## *In re: Frontier Communications Corporation, et al.*

**S.D.N.Y., Case No. #20-22476-mg**

**NOTICE OF BANKRUPTCY**

**Doc. #2392, 12 July 2024**
**(3 pages)**

Kerry S. Culpepper (admitted *pro hac vice*)
**CULPEPPER IP, LLLC**
75-170 Hualalai Rd., STE B204
Kailua-Kona, HI 96740
Telephone: (808) 464-4047
Facsimile: (202) 204-5181
Emails: kculpepper@culpepperip.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| FRONTIER COMMUNICATIONS CORPORATION, *et al.*[1] | Case No. 20-22476 (RDD) |
| | (Jointly Administered) |

**NOTICE OF BANKRUPTCY**

**TO THE HONORABLE JUDGE:**

On June 29, 2024, Movie Company Claimant Screen Media Ventures LLC ("SMV"), and

its parent company, Chicken Soup For The Soul Entertainment Inc., (collectively, the "Debtors"),[2]

---

[1] Due to the large number of debtor entities in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtor entities and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Reorganized Debtors' claims and noticing agent at https://cases.primeclerk.com/ftr. The location of the Reorganized Debtors' service address for purposes of these chapter 11 cases is: 50 Main Street, Suite 1000, White Plains, New York 10606.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

20-023A

filed for protection under chapter 11, title 11 of the United States Code (the "Bankruptcy Code"),

in a case captioned *In re: Chicken Soup For The Soul Entertainment Inc., et al.*, 24-11457, which

is pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy

Case").  Accordingly, Movie Company Claimant SMV is now a debtor and debtor-in-possession

pursuant to the Bankruptcy Code.

   Pursuant to 11 U.S.C. § 362(a), an automatic stay ("Automatic Stay") applicable to all

Debtors is imposed upon the filing of the Bankruptcy Case on June 29, 2024, and prohibits any

party from taking any action against any Debtor or its property.


Dated: July 12, 2024     Respectfully submitted,


        By: */s/ Kerry S. Culpepper*
          Kerry S. Culpepper (admitted *pro hac vice*)
          CULPEPPER IP, LLLC
          75-170 Hualalai Road, Suite B204
          Kailua Kona, Hawaii 96740
          Telephone: (808) 464-4047
          Facsimile: (202) 204-5181
          E-mail: kculpepper@culpepperip.com

          *Attorneys for Movie Company Claimants*

## CERTIFICATE OF SERVICE

I certify that on July 12, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notification of such filing to all ECF recipients in the above-captioned matter.

Pursuant to the Case Management Order #1 [Doc. #2229] applying Part VII rules including Fed. R. Bankr. P.7005 to this contested matter – Movie Company Claimants have complied with their service obligations by serving counsel for all Parties in this contested matter pursuant to Fed. R. Civ. Pro 5(b)(2)(E) for service by the above ECF submission.


Dated: Kailua-Kona, HI July 12, 2024


_/s/ Kerry S. Culpepper_
Kerry S. Culpepper (admitted _pro hac vice_)
**CULPEPPER IP, LLLC**
75-170 Hualalai Rd., STE B204
Kailua-Kona, HI 96740
Telephone: (808) 464-4047
Facsimile: (202) 204-5181
Emails: kculpepper@culpepperip.com

20-023A

**EXHIBIT 2**

***In re: Chicken Soup For The Soul Entertainment, Inc., et al.***

**D.DE Bankruptcy Court Case No. 24-11442 (TMH)**

**ORDER CONVERTING CASES FROM CHAPTER 11 TO CHAPTER 7 OF
THE BANKRUPTCY CODE AND GRANTING RELATED RELIEF**

**Doc. #5, 10 July 2024
(3 pages)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., et al.,[1] | Case No. 24-11442 (TMH) |
| Debtors. | (Jointly Administered) |

## ORDER CONVERTING CASES FROM CHAPTER 11 TO CHAPTER 7 OF THE BANKRUPTCY CODE AND GRANTING RELATED RELIEF

Upon consideration of the oral motion of the above-captioned debtors and debtors in possession (the "Debtors")[2] to convert the above captioned cases of the Debtors from cases under chapter 11 to cases under chapter 7 of the Bankruptcy Code (the "Motion"); and upon the record in these cases; and upon the findings made by the Court at the status conference on the record at the hearing on July 10, 2024 which are incorporated herein; and good and sufficient cause appearing therefore; it is hereby

**FOUND AND DETERMINED THAT:**

A.    In light of exigent circumstances of these cases, notice of the Motion and the hearing thereon was due and sufficient.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

[2]    Capitalized terms not defined herein shall have the meanings used in the Motion.

B.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

C.      This is a core proceeding under 11 U.S.C. § 157(b).

D.      The Debtors, prior to the granting of the relief pursuant to this Order, were debtors and debtors in possession in these cases pending under chapter 11 of the Bankruptcy Code.

E.      The Debtors' chapter 11 cases were not originally commenced as involuntary cases.

F.      The Debtors' chapter 11 cases were not previously converted to cases under chapter 11 of the Bankruptcy Code.

**IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      As of the date of this Order (the "Conversion Effective Date"), pursuant to section 1112(a) of the Bankruptcy Code, the chapter 11 cases of the above captioned  Debtors are converted to cases under chapter 7 of the Bankruptcy Code.

3.      Upon the Conversion Effective Date, the Debtors shall:

a.      Forthwith turn over to the chapter 7 trustee all records and property of the estates under its custody and control as required by Bankruptcy Rule 1019(4);

b.      Within 14 days of the Conversion Effective Date, file a schedule of unpaid debts incurred after the Petition Date of the superseded case including the name and address of each creditor, as required by Bankruptcy Rule 1019(5); and

           c.        Within 30 days from the Conversion Effective Date file and transmit to the U.S. Trustee a final report and account as required by Bankruptcy Rule 1019(5)(A).

           4.        A representative of the Debtors and, if requested by the chapter 7 trustee, counsel to the Debtors in these chapter 11 cases, shall appear at the first meeting of creditors after conversion of the Debtors' cases to chapter 7 pursuant to sections 341(a) and 343 of the Bankruptcy Code, and such representative shall be available to testify at such meeting.

           5.        Notwithstanding anything else in this Order, in no circumstance shall this Order be deemed to require any employee of the Debtors to provide any services without assurance of payment.

           6.        The Court retains jurisdiction to interpret and enforce the terms of this Order.

 

                                         *Thomas M. Horan*

**Dated: July 10th, 2024**
**Wilmington, Delaware**

                                         **THOMAS M. HORAN**
                                         **UNITED STATES BANKRUPTCY JUDGE**

**EXHIBIT 3**

**U.S. Senator Kennedy's letter to**

**Attorney General Merrick Garland and Chief Justice John Roberts**

**(4 Pages, including cover sheet)**

JOHN KENNEDY
LOUISIANA

SUITE SR-416
RUSSELL BUILDING
WASHINGTON, DC 20510
(202) 224-4623

MMI TE
APPROPRIATIONS
BANKING, HOUSING, AND
URBAN AFFAIRS
BUDGET
JUDICIARY
SMALL BUSINESS AND
ENTREPRENEURSHIP

# United States Senate

January 6, 2023

The Honorable Merrick Garland
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue
Washington, DC 20530

The Honorable John Roberts
Chairman
Judicial Conference of the United States
1 First Street NE
Washington, DC 20543

Dear General Garland and Chief Justice Roberts,

I write to you out of grave concern about the growing threat to national security from foreign entities funding litigation in our nation's courts. Few safeguards exist in any form of law, rule, or regulation to prevent foreign adversaries from participating in civil litigation as an undisclosed third-party in our country's federal courtrooms –this resulting in our national security and our entire government being vulnerable to manipulation.

A recent report estimated that the United States maintains one of the largest worldwide third-party litigation funding markets, where foreign hedge funds, private equity funds, and even sovereign wealth funds closely connected to hostile governments finance civil lawsuits as an investment in a desired outcome.[1] Foreign funders bankrolling these suits exert varying degrees of control and influence regarding litigation strategy, often even sidelining the original plaintiff in a case, or a portfolio of cases, in which the funder has an interest. According to the Institute for Legal Reform, foreign litigation funding risks destabilizing our civil legal system, in part by "increasing the filing of questionable claims, deterring and prolonging settlement efforts, contravening longstanding ethical rules for attorney conduct, and compromising the sanctity of the attorney-client relationship."[2]

The more pernicious threat is that hostile foreign governments or companies closely connected to them could use control of lawsuits in federal courtrooms to harm the United States' national security. The National Counterintelligence and Security Center has warned, for example, that

---

[1] Erica A. Moran and Theresa A. Griffin, *Considerations from the ABA's Best Practices for Litigation Funding*, THE NAT'L REV. (Feb. 16, 2021), https://www.natlawreview.com/article/considerations-aba-s-best-practices-litigation-funding.
[2] Institute for Legal Reform, U.S. Chamber of Commerce, *A New Threat: The National Security Risk of Third Party Litigation Funding*, Nov. 2022, https://instituteforlegalreform.com/wp-content/uploads/2022/11/ILR-Briefly-Oct-2022-RBG-FINAL-1.pdf.

adversaries like the People's Republic of China and the Russian Federation "use all instruments of national power to target the United States."[3] Our intelligence community recently concluded that China, in particular, "will remain the top threat to U.S. technological competitiveness as Beijing targets key technology sectors and proprietary commercial and military technology from U.S. and allied companies and research institutions associated with defense, energy, finance, and other sectors."[4] Given the relentless efforts by these adversaries, among others, in pursuit of their foreign policy goals, we should expect that litigation financing in our courtrooms is another dangerous weapon among their arsenal.

Merely by financing litigation in the United States against influential individuals, corporations, or highly sensitive sectors, a foreign actor can advance its strategic interests in the shadows since few disclosure requirements exist in jurisdictions across our country.[5] Foreign entities, including adversaries, "can fund frivolous litigation to overwhelm U.S. courts, target lawsuits to weaken critical industries, or obtain confidential materials through the discovery process."[6] Depending on the scale of involvement, foreign entities could exploit disputes to drain the resources of American companies in key industries with national security implications or cause them significant reputational harm in ways that benefit companies in their home country. If, for example, a foreign entity finances multiple lawsuits impacting a particular industry, it could even "destabilize entire sectors of the U.S. economy that are vital to American national and economic security."[7] In addition, foreign entities could also access sensitive technologies and information by circumventing existing controls embedded in federal law, like those enforced by the Committee on Foreign Investment in the United States, that exist to protect our security interests.

As a member of the Judiciary Committee, I ask that the Department of Justice provide details about any course of action that has been taken to mitigate this threat. I also recommend that the Judicial Conference of the United States consider proactively providing guidance to courts from coast to coast as means of preventing foreign entities from hijacking our federal judiciary.

I understand that Congress may be forced to consider amending the Foreign Agents Registration Act—among other actions—to protect the integrity of our nation's judicial system at the end of the day. Until that becomes necessary, I respectfully request a response to this inquiry no later than January 23, 2023 by contacting my Chief Counsel on the Judiciary Committee, Nathan Williams, at nathan_williams@kennedy.judiciary.gov.

---

[3] *Id.*

[4] Off. of the Dir. of Nat'l Intel., *Annual Threat Assessment of the U.S. Intelligence Community*, (Feb. 7, 2022), https://www.dni.gov/files/ODNI/documents/assessments/ATA-2022-Unclassified-Report.pdf.

[5] Only the District of New Jersey requires disclosure by "non-parties that provide non-recourse funding for attorneys' fees and expenses." Sara Merken, *Litigation Funders Howl as NJ Adopts Disclosure Requirement*, REUTERS (June 22, 2022), https://www.reuters.com/legal/litigation/litigation-funders-howl-nj-adopts-disclosure-requirement-2021-06-22/. This broad requirement is not limited though to foreign entities.

[6] Donald J. Kochlan, *Keep Foreign Cash Out of U.S. Courts*, WALL ST. J. (Nov. 24, 2022), https://www.wsj.com/articles/keep-foreign-cash-out-of-u-s-courts-litigation-courts-foreign-cash-profit-legal-reform-funder-lawsuit-money-11669227764.

[7] *Supra* note 2, at 12.

Sincerely,

John Kennedy
United States Senate

**EXHIBIT 4**

**U.S. Senators Scott and Rubio letter to**

**Chief Judge Altonanga, S.D. Florida**

**(3 Pages, including cover sheet)**

# United States Senate
## WASHINGTON, DC 20510-0908

November 3, 2023

The Honorable Cecilia Altonaga
Chief Judge
U.S. District Court for the Southern District of Florida
400 North Miami Avenue
Miami, Florida 33128

Dear Chief Judge Altonaga:

We write to highlight the dangers of foreign third-party litigation funding (TPLF) and the need for more transparency in the federal judiciary as it relates to this matter.

As you may know, foreign TPLF is when foreign actors, including hostile foreign actors, who are not directly engaged in a lawsuit provide funds to litigants in exchange for potential monetary returns from such litigation. Foreign TPLF may come from several sources, including the foreign state directly through sovereign wealth funds, as well as de facto arms of the state. These funds are typically not disclosed, and funders are able to exert an exorbitant amount of influence on the nature and direction of litigation through their financial contributions. The potential impacts of allowing unfettered and undisclosed foreign TPLF throughout the judiciary could be severe, unless properly addressed.

Most alarmingly, these foreign funders have the potential to provide hostile foreign actors with sufficient sway to exert undisclosed influence on litigation moving through the federal judiciary, including litigation related to critical infrastructure. Foreign actors attempting to capitalize on such influence may seek to, among other things, advance frivolous lawsuits, needlessly and excessively prolong litigation disputes, exacerbate domestic discord, or seize control of the litigation from the case's original parties. Tactics such as these, which seek to exploit the openness of American institutions and undermine critical infrastructure sectors, are frequently done by foreign adversaries, particularly China, are not in the strategic interest of the United States, and serve as an example of the need to defend the U.S. against hostile foreign actors seeking to undermine our national interests.

Lawmakers have an obligation to preserve the integrity of the judiciary and ensure that hostile foreign actors are not obtaining a strategic advantage over the United States. Preventing foreign actors from exploiting the accessibility of the legal system fits squarely into this obligation. As lawmakers consider measures to combat the looming threats posed by foreign TPLF, federal courts have the ability and responsibility to inform the public about the scope of the issue, including by implementing certain common-sense disclosure requirements. Currently, there is no uniform disclosure requirement for foreign TPLF in federal courts, though the Judicial Conference of the United States has previously discussed similar measures and are currently considering changes to the Federal Rules of Civil and Appellate Procedure aimed

requiring increased disclosure. Further, to date, several individual district courts throughout the country have, to varying degrees, implemented disclosure requirements.

The cost of allowing foreign actors, especially foreign adversaries, to take advantage of the American court system is high. As lawmakers seek to address the issue of foreign TPLF and prevent foreign adversaries from exploiting the justice system, we encourage you and your colleagues to consider adopting disclosure requirements related to foreign TPLF in your jurisdiction.

Thank you for your attention to this important matter.

Sincerely,

Marco Rubio
U.S. Senator

Rick Scott
U.S. Senator